Statement of SOTOMAYOR, J.

# SUPREME COURT OF THE UNITED STATES

———————

No. 25–6853 (25A926)

———————

## MELVIN TROTTER *v.* FLORIDA, ET AL.

ON APPLICATION FOR STAY AND ON PETITION FOR A WRIT OF
CERTIORARI TO THE SUPREME COURT OF FLORIDA

[February 24, 2026]

The application for stay of execution of sentence of death presented to JUSTICE THOMAS and by him referred to the Court is denied. The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR respecting the denial of the application for stay of execution and denial of certiorari.

Melvin Trotter is scheduled to be executed by lethal injection in Florida. He does not challenge Florida's use of lethal injection, in general, to carry out his execution. Nor does he argue that Florida's lethal-injection protocol, if followed, would violate the Constitution. Instead, Trotter argues that Florida is likely to maladminister that protocol in a way that increases the risk of a mangled execution that would violate his Eighth Amendment rights by causing him additional and unnecessary pain and suffering. I vote to deny Trotter's application seeking a stay of his execution because evidentiary support for his claim is lacking. Nevertheless, I write to express concern about Florida's implementation of its execution protocol and the secrecy surrounding it.

Trotter relies primarily on two pieces of evidence to support his claim. He first cites heavily redacted logs, produced in connection with a prior execution in Florida, which he contends show that Florida is using expired drugs in

conducting its executions.[1]  Trotter also cites an affidavit
from an expert he retained, who attests that "'[f]ailure to
properly monitor and remove expired substances could re-
sult in the use of substances with reduced pharmacologic
effect or produce unnecessary complications for the inmate
or the abrupt and early termination of an execution.'"  Pet.
for Cert. 11 (quoting App. to Pet. for Cert. 57–58).  Florida
argued below (and again in this Court) that Trotter's claim
is speculative because the records at issue do not conclu-
sively show any errors occurred, but the State provides no
assurances that it has not (and will not) use expired sub-
stances in its executions.  The Florida Supreme Court, re-
lying on a recent case involving similar arguments by a
death-row prisoner, agreed with the State and rejected
Trotters' claim as "'speculative and conclusory.'" ___ So. 3d
___, ___ (2026) (*per curiam*) (quoting *Heath* v. *State*, ___ So.
3d, ___, ___ (Fla. 2026)).

At this point, the evidence Trotter has assembled is not,
in my view, enough to show that Florida's administration of
its lethal-injection protocol is "'sure or very likely to cause
serious and needless suffering,'" as the Court's Eighth
Amendment precedents require.  *Glossip* v. *Gross*, 576 U. S.
863, 877 (2015) (emphasis deleted); see *ibid.* (requiring
showing of a "'substantial risk of serious harm'" or "'objec-
tively intolerable risk of harm'").  Even so, the record to
date is troubling.

The record reflects at least the possibility that recent
Florida executions have involved—in addition to expired
drugs—incorrect drug doses, the use of nonprotocol drugs,
and recordkeeping lapses that could mask yet additional
failings.  The Florida Supreme Court, moreover, has thus
far not allowed further inquiry into these potential

_____

[1] The records show additional possible flaws in recent executions, see
*infra* this page, but Trotter's petition before this Court limits his chal-
lenge to the use of expired etomidate.

problems and has recently denied requests for records that would prove or disprove claims like Trotter's. See, *e.g.*, *Heath*, \_\_\_ S. 3d, at \_\_\_. In doing so, the Florida Supreme Court appears to be placing prisoners in a Catch-22: It has affirmed the denial of requests for records on these issues, at least in part, because the prisoners do not yet have enough information to raise a "colorable" Eighth Amendment claim. *Ibid.* The very reason the prisoners are seeking the records, however, is to gather enough information to raise a colorable Eighth Amendment claim.[2]

Individuals seeking to challenge the method of their execution should not have to guess at whether the State is, or is not, following its execution protocol. Nor does the State appear to have any legitimate confidentiality interest in shielding from inspection basic facts about the implementation of its execution protocol, such as whether the State is using expired drugs. If the protocol is in fact being followed, then transparency instills confidence in the protocol for everyone—prisoners, the courts, and the public alike. If it is not, then secrecy is intolerable, and disclosure of the relevant records is indispensable for determining whether the lapses at issue are likely to lead to an Eighth Amendment violation. Cf. *Smith* v. *Hamm*, 601 U. S. \_\_\_, \_\_\_ (2024) (KAGAN, J., dissenting from application for stay and denial of certiorari) (slip op., at 1) (suggesting that the Court's Eighth Amendment precedents "can work fairly only when more is capable of being known about an execution method").

Going forward, I hope that Florida and its courts will recognize the paramount importance of ensuring that it conducts executions consistently with its approved protocol,

—————

[2] In earlier proceedings in this case, Trotter also challenged the denial of his own public-records request before the Florida courts, arguing that he was entitled to records relating to the administration of executions that have recently taken place in Florida. He does not raise any claim in this Court relating to the denial of his request for additional records.

and assuring all involved that it is preventing any infliction of needless suffering on those being executed in the State. By continuing to shroud its executions in secrecy, Florida undermines both the integrity of its own execution process and, potentially, this Court's ability to ensure the State's compliance with its constitutional obligations.